IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

———————————————————————

| | |
|---|---|
| BOARD OF TRUSTEES OF THE SHEET METAL WORKERS' NATIONAL PENSION FUND; BOARD OF TRUSTEES OF THE INTERNATIONAL TRAINING INSTITUTE FOR THE SHEET METAL AND AIR CONDITIONING INDUSTRY; BOARD OF TRUSTEES OF THE NATIONAL ENERGY MANAGEMENT INSTITUTE COMMITTEE FOR THE SHEET METAL AND AIR CONDITIONING INDUSTRY; BOARD OF TRUSTEES OF THE SHEET METAL OCCUPATIONAL HEALTH INSTITUTE TRUST; BOARD OF TRUSTEES OF THE NATIONAL STABILIZATION AGREEMENT OF THE SHEET METAL INDUSTRY; | ) ) ) ) ) ) ) ) ) ) ) ) ) ) CIVIL ACTION NO.: 1:18-cv-574 (LMB/TCB) |

CIVIL ACTION NO.: 1:18-cv-574 (LMB/TCB)

8403 Arlington Boulevard, Suite 300
Fairfax, VA 22031

Plaintiffs,

v.

CRO SHEET METAL CORP., and
13-07 37th Avenue
Long Island City, NY 11101

SERVE:
New York Secretary of State
Statutory Agent
One Commerce Plaza
99 Washington Avenue
Albany, NY  12231

ZELJKO LUZAIC
13-07 37th Avenue
Long Island City, NY 11101

Defendants.

———————————————————————

**Additional Required Service under 29 U.S.C. § 1132(h) to:**

**U.S. Department of Labor**
**Attn: Assistant Solicitor**
**for Plan Benefits Security**
**200 Constitution Ave., NW**
**Washington, DC 20002**

**U.S. Department of Treasury**
**Attn: Secretary of the Treasury**
**1500 Pennsylvania Ave., NW**
**Washington, DC 20220**

## COMPLAINT

Plaintiffs, the separate and individual Board of Trustees (collectively, "Trustees") for the Sheet Metal Workers' National Pension Fund ("NPF"), International Training Institute for the Sheet Metal and Air Conditioning Industry ("ITI"), National Energy Management Institute Committee for the Sheet Metal and Air Conditioning Industry ("NEMIC"), Sheet Metal Occupational Health Institute Trust ("SMOHIT"), and National Stabilization Agreement of Sheet Metal Industry ("SASMI," and together with NPF, ITI, NEMIC, and SMOHIT, "Funds") hereby complain as follows:

### Introduction

1.      This is a civil action brought by employee benefit plans, and by the Trustees of the Funds, pursuant to Sections 502(a)(3), (d)(1), (g)(2) and 515 of ERISA, 29 U.S.C. §§ 1132(a)(3), (d)(1), (g)(2), and 1145, and Section 301(a) of the Labor Management Relations Act of 1947, *as amended* ("LMRA"), 29 U.S.C. § 185.  The Funds seek a monetary judgment against Defendant Cro Sheet Metal Corp. (the "Company") awarding delinquent contributions and other monetary liabilities, accrued interest, liquidated damages, and attorneys' fees and costs, through the date of judgment, as well as those amounts that become due and owing through the date of judgment, pursuant to Sections 502 and 515 of ERISA, 29 U.S.C. §§1132 and 1145, Section 301 of the LMRA, 29 U.S.C. § 185, the collective bargaining agreement, and the trust documents governing the Funds.  The Funds also seek to hold liable the Company and Defendant Zeljko Luzaic, pursuant to ERISA §§ 409 and 502(a)(2), 29 U.S.C. §§ 1109 and 1132(a)(2), for a breach of fiduciary duties under ERISA, because Defendants exercised discretion and control over whether the Company made required contributions to the Funds where such unpaid contributions are, under the express terms of the collective bargaining

agreement, assets of the Funds. The Funds also seek a judgment compelling the Company to comply with a payroll audit and to pay unpaid contributions, interest, and liquidated damages determined to be owed by the audit, as well as an award of the attorneys' fees and costs incurred by the Fund, and the fees and costs associated with the audit.

## Jurisdiction and Venue

2.      Jurisdiction is conferred upon this Court by Sections 502(e) and (f) of ERISA, 29 U.S.C. §§ 1132(e) and (f), and Section 301(c) of the Labor Management Relations Act ("LMRA"),  29 U.S.C. § 185(c).  Jurisdiction also lies under 28 U.S.C. § 1331.

3.      Venue is proper under Section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), as the Funds are administered in this district with their principal places of business in Fairfax, Virginia.   Venue is also properly laid in this district, because it is here that the Company breached the relevant provisions of the collective bargaining agreement, and consequentially violated Section 515 of ERISA, 29 U.S.C. § 1145, because it is within this district that the relevant provisions of the collective bargaining agreement are required to be performed.

4.      Pursuant to Section 502(h) of ERISA, 29 U.S.C. § 1132(h), a copy of this Complaint will be served upon the Secretary of United States Department of Labor and the Secretary of the United States Department of the United States Department of the Treasury by certified mail on or about the date of filing.

## Parties

5.      Plaintiff, Board of Trustees of NPF, is a duly authorized Board of Trustees whose duty it is to administer NPF for the benefit of the participants and beneficiaries of NPF. NPF is an employee pension benefit plan within the meaning of Sections 3(2) and (3) of ERISA, 29 U.S.C. §§ 1002(2), (3), and a multiemployer plan within the meaning of Section 3(37) of

ERISA, 29 U.S.C. § 1002(37), established and maintained for the purpose of providing pension benefits to eligible employees.  NPF is, and at all times material herein has been, a jointly administered trust fund established pursuant to Section 302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5).  The Trustees are "fiduciaries" within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A), and are empowered to bring this action pursuant to Sections 502(a)(3) and 502(g)(2) of ERISA, 29 U.S.C. §§ 1132(a)(3) and 1132(g)(2).  NPF, the NPF trust fund, and the Board of Trustees of NPF are individually or jointly referred to as "NPF" in this Complaint. NPF is administered at 8403 Arlington Boulevard, Fairfax, Virginia 22031.

6.      Plaintiff Board of Trustees of ITI, is a duly authorized Board of Trustees whose duty it is to administer the plan for the benefit of the participants and beneficiaries of ITI.  ITI is an employee welfare benefit plan within the meaning of Sections 3(1) and (3) of ERISA, 29 U.S.C. §§ 1002(2), (3), and a multiemployer plan within the meaning of Section 3(37)(A) of ERISA, 29 U.S.C. § 1002(37)(A), established and maintained for the purpose of providing apprenticeship training and educational benefits to eligible employees.  ITI is, and at all times material herein has been, a jointly administered trust fund established pursuant to Section 302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5).  The Trustees of ITI are "fiduciaries" within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A), and are empowered to bring this action pursuant to Sections 502(a)(3) and 502(g)(2) of ERISA, 29 U.S.C. §§ 1132(a)(3) and 1132(g)(2). The Trust, the Board of Trustees, and Plan are individually and jointly referred to as "ITI" in this Complaint. ITI is administered at 8403 Arlington Boulevard, Fairfax, Virginia 22031.

7.      Plaintiff Board of Trustees of NEMIC, is a duly authorized Board of Trustees whose duty it is to oversee the operations of NEMIC.  NEMIC is a not-for-profit joint labor-

management organization established pursuant to the Labor Management Cooperation Act of 1978 and 29 U.S.C. § 186(c)(9), sponsored by the International Association of Sheet Metal, Air, Rail and Transportation Workers ("SMART") and the Sheet Metal and Air Conditioning Contractors' National Association ("SMACNA"), and funded by contributions under various collective bargaining agreements. NEMIC is the principal source of funding for the National Energy Management Institute. NEMIC is located at 8403 Arlington Boulevard, Fairfax, Virginia 22031.

8. Plaintiff Board of Trustees of SMOHIT, is a duly authorized Board of Trustees whose duty it is to oversee the operations of SMOHIT. SMOHIT is a joint labor-management health and safety organization, established under 29 U.S.C. § 186(c)(5), serving the sheet metal industry. The organization and its Trustees are individually and jointly referred to as "SMOHIT" in this Complaint. SMOHIT is located at 8403 Arlington Boulevard, Fairfax, Virginia 22031.

9. Plaintiff Board of Trustees of SASMI, is a duly authorized Board of Trustees whose duty it is to administer SASMI. SASMI is a trust fund established under 29 U.S.C. § 186(c)(5) and an "employee welfare benefit plan" and a "multiemployer plan" within the meaning of ERISA 3(1) and (37), 29 U.S.C. § 1002(1) and (37). The Board of Trustees is the "named fiduciary," "plan administrator," and "plan sponsor" within the meaning of ERISA sections 3(16) and 402(a), 29 U.S.C. §§ 1002(16) and 1102(a), and each individual trustee is a "fiduciary" within the meaning of ERISA section 3(21), 29 U.S.C. § 1002(21). The Plan and its Trustees are individually and jointly referred to as "SASMI" in this Complaint. SASMI is administered at 8403 Arlington Boulevard, Fairfax, Virginia 22031.

10. Upon information and belief, Defendant Cro Sheet Metal Corp. is, and at all times relevant to this action was, a New York corporation with a principal place of business at

13-07 37th Avenue, Long Island City, NY 11101.  The Company has been an employer within the meaning of 29 U.S.C. § 152(2) and Section 3(5) of ERISA, 29 U.S.C. § 1002(5), and has been engaged in an industry affecting commerce within the meanings of Sections 3(11) and (12) of ERISA, 29 U.S.C. §§ 1002(11) and (12).

11.    Service of process may be effectuated on the Company by serving the New York Secretary of State as statutory agent pursuant to N.Y. Business Corporation Law § 306(b)(1), which is given effect by ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), which authorizes nationwide service of process in any district where a company resides or may be found, and by Fed. R. Civ. P. 4(h)(1)(B), which authorizes service upon a corporation by serving any agent authorized by law to receive service of process.

12.    Upon information and belief, Defendant Zeljko Luzaic is the sole or majority owner of the Company and its principal officer.

## FACTUAL BACKGROUND

13.    At all times relevant to this action, the Company employed employees represented for the purposes of collective bargaining by the Sheet Metal, Air, Rail and Transportation Union (formerly known as the Sheet Metal Workers' International Association), Local Union No. 28 ("Local 28" or the "Union"), a labor organization representing employees in an industry affecting interstate commerce.

14.    At all times relevant to this action, the Company was signatory to, and bound by, a collective bargaining agreement ("CBA") with the Union.  Pursuant to the CBA, the Company is obligated to submit monthly remittance reports and fringe benefit contributions to the NPF, ITI, NEMIC, SMOHIT, and SASMI, for all hours worked or paid on behalf of the Company's covered employees within the jurisdiction of Local 28.

15.     Pursuant to the CBA, the Company is obligated to abide by the terms and conditions of the Trust Agreements establishing the Funds, including any amendments thereto and policies and procedures adopted by the Boards of Trustees (collectively, "Trust Documents").

16.     Payments due to the Funds are calculated separately for each Fund on remittance reports required to be prepared monthly by each contributing employer.  This is a self-reporting system and the Funds rely on the honesty and accuracy of the employers in reporting hours worked and paid, and in reporting the contributions owed for work by employees.

17.     Without the information contained in the remittance reports, the Funds cannot determine the entire amount of the monthly contributions due to the Funds or the employees' eligibility for benefits.

18.     The completed remittance reports and accompanying contribution payments must be submitted to the Funds no later than the twentieth (20th) day after the end of each month during which covered work was performed, and are delinquent if received thereafter.

19.     Pursuant to Sections 502 and 515 of ERISA, 29 U.S.C. §§ 1132 and 1145, the Agreement, the Trust Documents, and Section 301 of the LMRA, 29 U.S.C. § 185, if the Company fails to timely submit the contractually required remittance reports and contribution payments, and the Funds file a lawsuit to recover the unpaid contributions, the Company is required to pay the following amounts to the Funds:

 a.   The delinquent contributions;

 b.   Interest on the delinquent contributions at a rate of 0.0233% per day, compounded daily;

c. The greater of interest on the delinquent contributions at the above rate or liquidated damages equal to twenty percent (20%) of the delinquent contributions owed upon commencement of litigation;

d. Liquidated damages equal to the greater of fifty dollars ($50.00) or ten percent (10%) of the contributions due for each month of contributions paid late (i.e. 30 days after the due date), and before any lawsuit is filed ("Late Fees"); and

e. The attorneys' fees and costs incurred by the Funds in pursuing the delinquent amounts, including the attorneys' fees and costs in this action.

20.     For the period of January 2017 through January 2018, the Company employed employees within the jurisdiction of Local 28 for whom contributions were owed to the Funds and failed to timely make all the required contributions, liquidated damages and/or interest, despite its obligation to do so under the CBA, Trust Documents, Section 515 of ERISA, 29 U.S.C. § 1145, and Section 301 of the LMRA, 29 U.S.C. § 185.  Specifically, the Company paid contributions due to the Funds for the months of January 2017 through March 2017 more than 30 days after the due date and failed to make the contributions due to the Funds for November 2017 through January 2018.

21.     The Company's CBA with the Union provides that "[e]mployer contributions are considered assets of the respective Funds and title to all monies paid into and/or due and owing said Funds shall be vested in and remain exclusively in the Trustees of the respective [F]unds."

22.     The CBA also provides that "[t]he books and records of the Employer shall be made available at reasonable times for inspection and audit by, but not limited to, the accountant, outside independent auditors or other representatives of the Trustees of any [Funds]."  The CBA further provides that the "[e]mployer agrees to pay the cost of the audit if the audit shows a

-8-

discrepancy of ten percent (10%) or more when compared to the total contributions made during the audit period."

23.      Additionally, the Trust Documents for the Funds provide that the Trustees of the Funds have the authority to conduct an audit of the entire personnel, payroll wage records encompassing all employees and any job or project information of any employer for the purposes of assuring the accuracy of reports and contributions, compliance with the terms of the Trust Documents or the applicable Plan Document.

24.      The Trust Documents further provide that if an audit or other information reveals that inaccurate reports or insufficient contributions have been made, the employer may be required to pay all fees, including audit fees and expenses and also all attorneys' fees and costs in collecting those fees or expenses if legal counsel is engaged or if legal action is necessary to enforce this provision.

25.      In November of 2017, the Funds advised the Company that it had instructed their auditor to audit the Company's employee payroll records to verify the accuracy of contributions and remittance reports submitted to the Funds.  Since that time, the auditor has made repeated requests and efforts to obtain the records needed to complete the audit, but the Company has refused to provide all of the necessary records.

### COUNT I:  DELINQUENT CONTRIBUTIONS
**ERISA §§ 502(g)(2) and 515, 29 U.S.C. §§ 1132(g)(2) and 1145**
**(The Company)**

26.      Plaintiffs incorporate the foregoing Paragraphs as if fully stated herein.

27.      This claim arises under Sections 502(a)(3) and 515 of ERISA, 29 U.S.C. §§ 1132(a)(3) and 1145, and Section 301 of the LMRA, 29 U.S.C. § 185.

28.     The Company is obligated, under the terms of the CBA, to provide contributions to the Funds on behalf of its covered employees.  The Company has failed and refused to fulfill its contractual obligations for due and unpaid contributions.

29.     The Funds' records show that for the time period of January 2017 through January 2018, the Company owes $13,983.68 in delinquent contributions, $483.12 in interest on the delinquent contributions, $2,796.74 in liquidated damages on the delinquent contributions, and $428.97 in late fees for the late paid contributions.

30.     As of the date of this Complaint, the Funds have received no payments on account of the Company's delinquencies.

31.     Prior to commencing this lawsuit, the Funds sent letters and directly contacted the Company to obtain the outstanding contributions from the Company.  These efforts have been to no avail and the Funds believe there is little prospect that, lacking judicial compulsion, the Company will satisfy its obligations to the Funds, and pay the delinquent and unpaid contributions, liquidated damages, and interest due on the delinquent and unpaid contributions.

32.     The Company's failure to remit all of the contributions, interest and liquidated damages due to the Funds on account of work performed is a direct breach of its obligations under the CBA and Trust Documents, and is a violation of Section 301 of the LMRA, 29 U.S.C. § 185(a), and Sections 502(a)(3) and 515 of ERISA, 29 U.S.C.  §§ 1132(a)(3), 1145.

33.     Under Section 301 of the LMRA, 29 U.S.C. § 185(a), and Section 502(g)(1) and (2) of ERISA, 29 U.S.C.  § 1132(g)(1), (2), Plaintiffs are entitled to judgment in the amount of the due and unpaid contributions, interest and liquidated damages, as well as reasonable attorneys' fees and costs of this action.

34.     Plaintiffs seek relief as stated in the Prayer for Relief.

## COUNT II:  BREACH OF FIDUCIARY DUTY
**ERISA §§ 409 and 502(a)(1)(B), 29 U.S.C. §§ 1109 and 1132(a)(1)(B)**
**(The Company and Zeljko Luzaic)**

35.    Plaintiffs incorporate the foregoing paragraphs as if fully stated herein.

36.    As noted above, the Company's CBA expressly provides that "[e]mployer contributions are considered assets of the respective Funds and title to all monies paid into and/or due and owing said Funds shall be vested in and remain exclusively in the Trustees of the respective [F]unds."

37.    By deciding whether the Company paid contributions to the Funds as required under the CBA, the Company exercised control over the assets of the  various Funds and, as a result, the Company became a fiduciary of the Funds pursuant to ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), which provides that "a person is a fiduciary with respect to a plan to the extent . . . he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets . . . "

38.    Defendant Luzaic made the decisions, on behalf of the Company, not to pay the contributions that were owed to the Funds and, as a result, exercised authority and control over the Funds' assets, thereby also making himself a fiduciary of the Funds.

39.    Both Defendants are "persons" within the meaning of ERISA as ERISA § 3(9), 29 U.S.C. § 1002(9), defines the term "person" to include, *inter alia*, both individuals and corporations.

40.    As fiduciaries, ERISA imposes various duties upon Defendants, including to act "solely in the interest of the participants and beneficiaries and . . . for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan."  ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A).

41.     Defendants breached this fiduciary duty when they exercised control over the Funds' assets in a manner that was not in the interests of the Funds' participants and beneficiaries by failing to pay the contributions that were owed to the Funds.

42.     Rather than exercising control over the Funds' assets in such a way that would provide benefits to the Funds' participants and beneficiaries and/or defray the Funds' reasonable expenses, upon information and belief, Defendants instead used the Funds' assets (consisting of the unpaid contributions) for other purposes that were not in the interests of the Funds' participants and beneficiaries, such as Defendants' corporate expenses.

43.     Pursuant to ERISA § 409, 29 U.S.C. § 1109(a), "[a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate . . . ."

44.     Plaintiffs have standing to assert a claim against Defendants for breaching their fiduciary duties pursuant to ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2).

45.     Plaintiffs seek relief as stated in the Prayer for Relief.

## <u>COUNT III: COMPELLING COMPLIANCE WITH AN AUDIT</u>
### (The Company)

46.     Plaintiffs incorporate the foregoing paragraphs as if fully restated herein.

47.     Pursuant to the CBA and the Trust Documents, the Funds have the right to access, and the Company has an obligation to provide, the records necessary to complete a payroll audit to ensure the Company is in compliance with its contribution obligations and other related obligations.

48.     Nevertheless, the Company has consistently refused to comply with its obligation to comply with a payroll audit for the time period January 2014 through December 2016.

49.     The Company is obligated to comply with the Funds' demand for such an audit.

50.     The Fund requests relief as stated in the Prayer for Relief.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that this Court:

1.     Award Plaintiffs, on behalf of the Funds, a judgment for all sums due to the Funds by the Company under the terms of the CBA, the Trust Documents, ERISA §§ 502(g)(2) and 515, and LMRA § 301, including the following:

    a.     The Company's delinquent contributions in the total amount of $13,983.68 for hours worked during the period of January 2017-January 2018;

    b.     Interest on the delinquent contributions at a rate of 0.0233% per day, compounded daily, from the date due until the date paid, or the date of judgment in the amount of at least $483.12;

    c.     A minimum of $2,796.74, representing liquidated damages equal to the greater of 20% of the delinquent contributions or interest calculated at the above rate;

    d.     Late Fees in the amount of $428.97 on the late paid contributions for January 2017 through March 2017;

    e.     All attorneys' fees and costs incurred by the Funds in pursuing delinquent contributions as provided by Section 502(g) of ERISA;

    f.     Any delinquent contributions of the Company for any hours worked beyond January 2018 as may be reported to or discovered by the Fund, as well as the related damages on any such delinquencies available and due to the Funds under the terms of the CBA, the Trust Documents, ERISA §§ 502(g)(2) and 515, and LMRA § 301 as specified above; and

2.     Award Plaintiffs, on behalf of the Funds, a judgment for all of the following due to the Funds as a result of Defendants' breach of fiduciary duty pursuant to ERISA §§ 409 and 502(a)(2):

    a.     All losses incurred by the Funds due to such breach of fiduciary duty, including, but not limited to, all amounts to which the Funds are entitled as stated in Paragraph 1 of this Prayer for Relief;

    b.     All profits earned by Defendants as a result of their breach of fiduciary duties; and

3.     Award Plaintiffs, on behalf of the Funds, a judgment Ordering the Company forthwith to permit an audit of all records necessary to perform a complete audit including wage, payroll, and personnel records for the period January 2014 through December 2016, during which Defendant has been obligated to contribute to the Funds; and awarding all of the following:

    a.     All unpaid contributions owed to the Funds, in an amount to be determined by the payroll audit;

    b.     Interest on the unpaid contributions, in an amount to be proved;

    c.   An amount to be proved equal to the greater of (i) interest on the unpaid contributions (i.e., double interest); or (ii) liquidated damages equal to 20% of the unpaid contributions;

    d.   The Funds' reasonable attorneys' fees and costs;

    e.   The fees and costs incurred by the Funds in auditing the Company; and

    4.   Award Plaintiffs, on behalf of the Funds, such other relief as the Court deems just and proper.

Dated: Washington, DC
       May 15, 2018

                                    Respectfully submitted,

                                      /s/ Christopher M. Leins
                                      Christopher M. Leins (VA Bar No. 78742)
                                      Kristina Salamoun (VA Bar No. 89157)
                                      Slevin & Hart, P.C.
                                      1625 Massachusetts Avenue N.W., Ste. 450
                                      Washington, DC  20036
                                      (202) 797-8700
                                      (202) 234-8231 (facsimile)
                                      cleins@slevinhart.com
                                      ksalamoun@slevinhart.com

                                      *Attorneys for Plaintiffs*

20627037v1